Paul James JONES, Defendant Below, Appellant,

v.

The STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

July 11, 1968.

Ben T. Castle of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant below, appellant.

Jay H. Conner, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

The determinative question on this appeal is whether there was evidence of a forgery sufficient to support the conviction of the defendant for aiding and abetting the publishing and uttering of a forged instrument. We think not.

The defendant was indicted, with two others, on charges of forgery, publishing and uttering a forged instrument, and conspiracy to commit those offenses. The forgery alleged was that of the signature of the endorser on the back of a check. At the non-jury trial, the State entered a *nolle prosequi* as to the two conspiracy counts; and the Trial Judge granted the defendant's motion for judgment of acquittal as to the charge of forgery on the ground of insufficient evidence. A similar motion as to the charge of aiding and abetting the publishing and uttering of a forged instrument was denied, however, and the defendant was convicted of that offense.* The defendant appeals.

■ It is agreed that the State must prove that an instrument was forged by someone before it may seek conviction of aiding and abetting the publishing and uttering of the forged instrument as true. E. g., Carr v. United States (6 Cir., 1960) 278 F.2d 702. The dispute revolves solely around the question of whether the State's evidence as to a forgery was adequate to support the conviction here under scrutiny.

The State adduced evidence tending to prove the following facts: The defendant, Paul James Jones, drove an automobile to the drive-in window of a local bank. Two other men were in the car with him, one in the front right seat, one in the rear. A check and wallet-type identification folder were handed by the front seat passenger to Jones who in turn handed them to the bank teller. The check was drawn on the account of Highview Nursing Home at another bank, was made payable to Charles Allen in the amount of $98., and bore the endorsement "Charles Allin." The identification folder contained the Delaware drivers license of "Charles Allen, 600 West 8th Street, Wilmington, Delaware." Upon seeing the check and accompanying identification, the bank teller pressed an alarm connected with the State Police Headquarters. The alarm also alerted the bank manager who came out of the bank building. As he approached the car, Jones drove away; but the police apprehended Jones and his companions still in the automobile about 15 minutes later.

Charles Allen did not testify and there is no explanation on the record for his failure to appear. Neither of the passengers testi-

---

* 11 Del.C. § 543(5) provides:

"Whoever, with intent to defraud,—

&ast; &ast; &ast; &ast; &ast;

"(5) publishes or utters as true, or passes or attempts to pass, any such forged or counterfeited instrument or writing, or any such falsely altered promissory note or other instrument of writing mentioned in this section, knowing the same to be forged, counterfeited, or altered, shall be guilty of a felony, &ast; &ast; &ast;."

fied. The bank manager testified that two previous checks drawn on the Highview Nursing Home account had proved worthless because the account was closed; however, he did not connect the defendant to the earlier checks except to say that all three checks were of the same type. The bank teller testified that she sounded the alarm because, based upon her experience with the earlier checks on the same account, she "knew it was a bad check." The teller was unable to connect the defendant to the earlier checks.

This was the sum and substance of the State's evidence. It is clear, we think, that the State failed to prove that the check was a forged instrument; specifically, there was no proof that the endorsement of Charles Allen (or Allin) was forged, as alleged in the indictment. The publishing and uttering of a worthless check may have been proved—but not the publishing and uttering of a forged check.

■ With reference to the evidence upon which the State places particular reliance as to a forgery: Neither the knowledge of the bank officials of the closed account,. nor the variance in the spelling of the payee's name on the endorsement, can reasonably give rise to the inference that the signature of the endorser was forged. A check drawn on a closed account may be presumed to be a worthless check, but it cannot give rise to the presumption that the endorsement of the payee is a forgery; and a variance between the spelling of the name of the payee on the face of a check and his signature on its back occurs too frequently in every-day transactions to permit an inference of forgery. Untenable, too, is the State's contention that a forgery is proved by the defendant's flight. While an inference of guilt may be drawn from flight, the State must first prove the crime

to which the inference may relate. Compare Bernard v. People, 124 Colo. 424, 238 P.2d 852 (1951). Finally, the State argues that it would be impracticable and unreasonable to require that the payee be called to testify that the endorsement was forged because "the State simply cannot produce a fictitious person." No basis was laid for that argument. There is no evidence that Allen (or Allin) did not exist and did not, in fact, reside at 600 West 8th Street, as indicated by the drivers license. If he did exist, the State should have called him as a witness to deny the endorsement, or should have established good cause for not so doing. If he did not exist, and this is in fact a fictitious payee case, the State should have made a showing that an unsuccessful search was made in an effort to locate such person in the community. The drivers license issued in the name of the payee, including an address, is inconsistent with the State's theory that the endorsement was that of a non-existent person and, therefore, a forgery. The minimal quantum of proof required to support that theory was proof to a reasonable certainty that the payee was a fictitious person. See Annotation: Forgery-Fictitious Name, 49 A.L.R. (2d) 852, 876, 881. The State's evidence in this regard was altogether deficient.

■ We hold that there was insufficient evidence to prove that the endorsement on the check was forged, as charged in the indictment. Accordingly, the conviction of aiding and abetting the publication and uttering of a forged instrument as true may not stand.

We do not reach the other grounds of appeal. The judgment below is reversed and the cause remanded for entry of judgment of acquittal.